UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
WINSTON JOHNSON, JR.,

                 Plaintiff,

    -against-

WILLIAM DUMPHY, JOSEPH JIROVEC,
ALESSANDRO CERCIELLO, JOSEPH DESIMONE,
RONALD BARONE, and CHRISTOPHER BARONE,

                 Defendants.
------------------------------------------------------------------- x

Report &
Recommendation
09-CV-2758 (ILG)

GOLD, STEVEN M., U.S.M.J.:

    Plaintiff brings this action pursuant to 42 U.S.C. §§ 1981, alleging that defendants violated his civil rights by assaulting him while yelling racial epithets.[1] Defendant DeSimone is the only defendant to have appeared in the action. Plaintiff recently reached a settlement agreement with DeSimone. Docket Entry 46.

    Upon plaintiff's application and in light of their failure to appear or otherwise defend this action, the Clerk of the Court noted the default of defendants Alessandro Cerciello and William Dumphy on July 13, 2010.[2] Docket Entries 23, 24. Plaintiff was unable to serve the other defendants in this action, Joseph Jirovec, Ronald Barone and Christopher Barone.

    The Honorable I. Leo Glasser has referred the matter to me to report and recommend on the amount of damages to be awarded. Docket Entry 33. On July 20, 2011, I held a hearing on plaintiff's motion. For the following reasons, I respectfully recommend that judgment be entered

---

[1] Plaintiff also brings a federal claim pursuant to 42 U.S.C. § 1985(3) and state law claims of assault, battery, negligence, negligence *per se*, and intentional infliction of emotional distress. Because these claims seek damages for the same injuries that are the subject of plaintiff's federal claims, I do not separately analyze them. *See Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995).

[2] Cerciello and Dumphy were served with the original complaint by the "nail and mail" method in October, 2009. The amended complaint does not bring any new claims but rather adds and deletes some defendants. Accordingly, as is permitted pursuant to Federal Rule of Civil Procedure 5(a)(2), plaintiff mailed the amended complaint to Cerciello and Dumphy.

against defendants Cerciello and Dumphy, jointly and severally, in the amount of $100,000. I further respectfully recommend that plaintiff's claims against defendants Joseph Jirovec, Ronald Barone and Christopher Barone be dismissed.

## FACTS

Winston Johnson, Jr., an African-American male who was fifteen years old at the time, alleges that he and his three friends, all African-American males, got lost riding their bicycles in the Gerritsen Beach area of Brooklyn at approximately 9:00 p.m. on June 26, 2006, while on their way home from playing basketball. Compl. ¶ 14.[3] At the hearing, Johnson testified that he believed the neighborhood they were in that night was predominately white. Tr. at 16.[4]

According to Johnson, he and his friends passed a group of approximately twenty white men and teenagers who began chasing them, shouting that they "hated fucking niggers," and yelling that plaintiff and his friends "don't belong [here]" and would "get fucked up for coming into [their] neighborhood." Compl. ¶¶ 15-17; Tr. 19-20. At least one of the white men was holding a baseball bat. Tr. 20. Johnson further alleges that a brown Toyota Camry attempted to run him over, and that the driver of the vehicle yelled "We hate you Effin Niggers" at plaintiff and his friends. Compl. ¶ 20; Tr. 13.

Although his friends escaped without harm, plaintiff was not as fortunate. Johnson was knocked off his bicycle and assaulted. Compl. ¶ 18. More specifically, someone put Johnson in a choke hold, yanking him off his bike. Tr. 22. Johnson then heard others in the group saying "hit him, hit him; kill him." *Id*. at 23. While in the choke hold, Johnson was punched in the face for approximately "ten to fifteen minutes of constant beating." *Id*. at 25-26. Although he was

---

[3] Citations to "Compl." refer to the Amended Complaint, Docket Entry 14. The only difference between the original and amended complaints is that the original complaint named Richard DaSilva and Christopher Rapuzzi as defendants, but they are not named in the amended complaint, and the amended complaint adds Ronald Barone and Christopher Barone as defendants.

[4] "Tr." refers to the transcript of the inquest hearing I held on July 20, 2011, Docket Entry 39.

then allowed to get up, Johnson was soon again knocked to the ground. Defendants and others then yelled racial slurs at him and kicked and punched him, causing his nose and ear to bleed. Compl. ¶ 19; *see also* Tr. 27, 29, 31.

Johnson eventually escaped his attackers when a BMW pulled up next to him and the driver beckoned him to get in the car. Compl. ¶ 21. Johnson got in and the driver of the BMW drove him home to his parents. *Id*. ¶ 22. The defendants named in the complaint were subsequently charged with assault, aggravated harassment and robbery as hate crimes for their actions. *Id*. ¶ 23.

As a result of this incident, Johnson suffered facial bruising and lacerations, headaches, difficulty sleeping, and fear and anxiety about being out in public. Tr. 38-39, 46-47, 51, 73-75, 79. Although he has received approximately two years of mental health therapy and has taken prescription medication, Johnson testified that his fears and anxiety remain. *Id*. at 46, 51, 54, 56, 61-63; Docket Entry 40-1.[5]

## DISCUSSION

I. *Liability*

Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S. Ct. 1049 (1993); *Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). A court, however, retains the discretion to determine whether a final default judgment is appropriate. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Even after a defendant has defaulted, "[a] plaintiff must ... establish that on the law it is entitled to the relief it seeks, given

---

[5] In light of the sensitive nature of mental health records, particularly those of a minor, plaintiff may move to restrict public access to the documents attached as exhibits in Docket Entry 40.

the facts as established by the default." *U.S. v. Ponte*, 246 F. Supp. 2d 74, 76 (D. Me. 2003) (citation omitted). *See also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action).

Section 1981(a) states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of the laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981(c) provides that "the rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." *Id.* § 1981(c). The Second Circuit has construed § 1981(c) to provide that state action is not required for a valid § 1981 claim. *See Phillip v. Univ. of Rochester*, 316 F.3d 291, 294-95 (2d Cir. 2003) (holding that the statute, on its face, belies the notion that state action is required to assert a § 1981 claim). Thus, to establish a § 1981 claim, a plaintiff must allege that he is a member of a racial minority, that defendant intentionally discriminated against him because of his race, and that the discrimination concerned one of the activities enumerated in the statute. *Wong v. Yoo*, 649 F. Supp. 2d 34, 68-69 (E.D.N.Y. 2009).

A § 1981 claim against a private individual must have a nexus to state proceedings or laws. *Phillip*, 316 F.3d at 298; *Wong*, 649 F. Supp. 2d at 70; *Pierre v. J.C. Penney Co.*, 340 F. Supp. 2d 308, 313 (E.D.N.Y. 2004). Such a nexus may be established where "a defendant injures 'the security of persons and property' in violation of a state law," including state criminal laws prohibiting assault and battery. *Wong*, 649 F. Supp. 2d at 70.

Here, plaintiff alleges that the defaulting defendants, along with others, physically attacked him while spewing racial epithets. Compl. ¶¶ 15-20. The attack violated New York

4

state criminal laws and was clearly racially motivated. Although the complaint does not provide any specific factual allegations as to any particular defendant, plaintiff has submitted evidence demonstrating that the defaulting defendants participated in the June, 2006 incident. More specifically, plaintiff's counsel has submitted an affirmation that Cerciello pled guilty to menacing in the second degree as a hate crime and that Dumphy pled guilty to assault in the third degree as a hate crime for their involvement in the events leading to this lawsuit. Docket Entry 41. This is sufficient to establish the personal involvement of these defendants and I therefore respectfully recommend that Cerciello and Dumphy be held liable under § 1981 for their actions on June 26, 2006.

II.     *Damages*

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup*, 973 F.2d at 158. Rather, claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Id*. A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40.

As indicated above, I held a hearing with respect to damages on July 20, 2011. Johnson and his mother testified. Despite having notice of the hearing, *see* Docket Entry 36, defendants did not participate in it, and have not submitted any opposition to any of plaintiff's submissions.

*A. Background*

When Johnson arrived home, his shirt was bloody, he had bruises and wounds on his face and ear, and he complained of pounding pain in his head. Tr. 73, 74. The next day, Johnson went to a hospital, where doctors took x-rays and recommended an over-the-counter pain reliever. *Id.* at 35-36. The following week, Johnson went to his personal physician for follow-up because he was still in pain, had constant headaches, and was having trouble sleeping. *Id.* at 38-39, 79. Johnson missed two to three weeks of summer school because of pain in his leg and ear, headaches, and fear. *Id*. at 48-49. The headaches continued for approximately a month after the incident. *Id.* at 84.

At the hearing, Johnson testified that, after the incident, he had a "fear of being amongst large groups of people," and "didn't feel comfortable around Caucasian people for a long time." *Id*. at 46-47. Johnson had a general fear of being in public, and even walking around in his own school. *Id*. at 51-52. Johnson also believes that the incident has caused him to be reluctant to trust people, especially Caucasian people and people he does not know. *Id.* at 61-62. In addition, Johnson testified that he had difficulty sleeping because he often experienced a feeling that "somebody was attacking [him] in [his] sleep," causing him to wake up screaming. *Id*. at 46. His mother testified that, after the incident, he appeared angrier than before, his performance in school suffered because he had trouble focusing, and he socialized less. *Id.* at 86, 101-02, 104. Johnson sought treatment with mental health professionals, who diagnosed him with post-traumatic stress disorder, and prescribed anti-depressant medication. Docket Entry 40-1. Johnson took the medication for a few months but then discontinued its use due to the side effects. *Id.*; Tr. 56. Johnson also attended more than thirty psychotherapy sessions for almost two years following the assault. Docket Entry 40-1.

Johnson testified that, even five years after the assault, residual effects linger. Johnson is less social than before and now prefers to be alone. Tr. at 62. He still has headaches. *Id*. at 63. Despite extensive mental health treatment, Johnson's fears remain, even to this day. *Id*. at 54, 59. Johnson's mother testified that she has not seen significant improvement in his mental health. *Id*. at 94. Despite his difficulties, though, Johnson, who is currently twenty-years-old, attends Medgar Evers College, a predominantly African-American college in Brooklyn, where he is studying nursing, and works two jobs. *Id.* at 6-8, 62-63.

### B. *Compensatory Damages*

I respectfully recommend a compensatory damages award of $75,000. The Second Circuit has generally upheld awards of $100,000 or more for subjective emotional distress, even where no medical treatment was sought. *Patterson v. Balsamico*, 440 F.3d 104, 120 (2d Cir. 2006). *See also Wallace v. Suffolk County Police Dep't*, 2010 WL 3835882, at *8-10 (E.D.N.Y. Sept. 24, 2010) (declining to reduce a jury award of $200,000 for "garden-variety" emotional damages where an adult "[p]laintiff testified that he experienced sleeplessness, anger, difficulty with his personal and family relationships, stress, tension, and emotional trauma," and citing cases supporting such an award); *Spielberg v. Am. Airlines, Inc.*, 105 F. Supp. 2d 280, 281 (S.D.N.Y. 2000) (upholding jury's award of $150,000 for emotional distress caused by a traumatic experience and citing cases for the proposition that an award in the range of $150,000 to $600,000 is reasonable in "cases involving traumatic experiences which caused emotional distress or led to post traumatic stress disorder"); *but see Poznyakovskiy v. City of New York*, 2008 WL 842438, at *4 (E.D.N.Y. Mar. 11, 2008) (finding an award of $50,000 is reasonable in assault and battery cases).

Here, Johnson, who was only fifteen years old at the time, was physically assaulted by a group of white males. He sustained bruises and lacerations, especially around his head. As a result of the incident, Johnson suffered from headaches and had difficulty sleeping. Johnson was diagnosed with post-traumatic stress disorder and prescribed an anti-depressant. Although his physical injuries have healed, the emotional scars from the incident have not. Johnson testified that, even five years after the incident and after almost two years of mental health therapy, he continues to be anxious in public places and among large groups. For these reasons, I find that an award of $75,000 in compensatory economic damages and past and future emotional damages is appropriate.[6]

*C. Set-Off*

As noted above, plaintiff has settled his claims against defendant DeSimone. These claims were settled for $7,500. "[F]ederal common law governs whether a defendant in an action brought under federal law is 'entitled to a credit against judgment for the settlement by another party to the dispute.'" *Chloe v. Zarafshan*, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009) (quoting *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 599 (2d Cir. 1989)).

Although federal law permits a defendant's liability to be reduced based on its proportionate share of liability where a jointly liable co-defendant has settled, *McDermott v. AmClyde*, 511 U.S. 212, 221 (1994), there appears to be a split of authority over whether a defendant in default is entitled to any set-off. At least one court within this Circuit has held that a defendant in default "may not invoke the benefits of the set-off rule." *Chloe*, 2009 WL 2956827, at *7. *See also RLI Ins. Co. v. King Sha Group*, 598 F. Supp. 2d 438, 446-47 (S.D.N.Y. 2009) (finding that, under New York law, a defaulting defendant is not entitled to any

---

[6] Johnson's economic damages consist of approximately $500 in co-payments for his mental health treatment. Docket Entry 40-5.

8

set-off based on a co-defendant's settlement). However, other courts, sometimes without discussing the issue, have found that a set-off is appropriate and reduced a plaintiff's award against a defaulting defendant by the amount of a settlement. *See, e.g., Cooper v. Faith Shipping*, 2009 WL 1789405, at *6-8 (E.D. La. June 22, 2009) (citing *McDermott* and noting that, because of the default, "there will be no apportionment of fault" from which to determine each defendant's proportionate share of damages, but nevertheless reducing defaulting defendant's liability by the amount of the settlement); *see also Allstate Ins. Co. v. Palterovich*, 653 F. Supp. 2d 1306, 1325 (S.D. Fla. 2009) (reducing a RICO default judgment by the amount of the settlements but without discussion of the set-off issue); *State Farm Mut. Auto. Ins. Co. v. Kalika*, 2007 WL 4326920, at *9 (E.D.N.Y. Dec. 7, 2007) (same).

Although the Supreme Court stated in *McDermott* that it is "generally agreed that when a plaintiff settles with one of several joint tortfeasors, the nonsettling defendants are entitled to a credit for that settlement," the Court also found that nothing prohibits a plaintiff from recovering more than his actual losses. *McDermott*, 511 U.S. at 208, 219. Indeed, the Court stated, "[t]he law contains no rigid rule against overcompensation. Several doctrines . . . recognize that making tortfeasors pay for the damage they cause can be more important than preventing overcompensation." *Id*. at 219. In light of the circumstances here – a settlement for a fairly nominal amount and the defendants' default – I find that applying any set-off is neither required by law nor necessary to achieve a just result.

    *D. Punitive Damages*

Plaintiff also seeks an award of punitive damages against defendants. Docket Entry 35. An award of punitive damages is permissible for a violation of § 1981 where a defendant has acted with a "reckless or callous disregard for the plaintiff's rights, as well as [for] intentional

9

violations of federal law." *Smith v. Wade*, 461 U.S. 30, 51 (1983). Courts have applied the standard in *Smith*, a § 1983 action, when awarding punitive damages under § 1981. *Jowers v. DME Interactive Holdings, Inc.*, 2006 WL 1408671, at *4 n.5 (S.D.N.Y. May 22, 2006). *See also Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 529-30 (1999) (noting that an award of punitive damages is permissible under Title VII where a defendant "has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual'"); *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975) (recognizing the availability of punitive damages for § 1981 violations); *Hill v. Airborne Freight Corp.*, 212 F. Supp. 2d 59, 74-75 (E.D.N.Y. 2002) (same). "As an alternative to proving that the defendant knew it was acting in violation of federal law, '[e]gregious or outrageous acts may serve as evidence supporting an inference of the requisite evil motive.'" *Hill*, 212 F. Supp. 2d at 75 (quoting *Kolstad*, 527 U.S. at 538). The purpose of a punitive damages award is to punish the defendant for reprehensible conduct and to deter defendant and others from committing similar acts. *Id.* at 54. "[P]unitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

The Supreme Court has outlined three factors to consider when evaluating the reasonableness of a punitive damages award: 1) the degree of reprehensibility of the defendant's conduct, 2) the disparity between the punitive damages award and the harm caused to plaintiff, and 3) "the difference between this remedy and the civil penalties authorized or imposed in

comparable cases."[7] *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996). The Court has upheld punitive damage awards of more than four times the amount of compensable damages, stating that "[s]ingle digit multipliers are more likely to comport with due process" than larger ones. *State Farm*, 538 U.S. at 425. Where the punitive damages award is a "fraction of the compensable damages, rather than a multiple thereof," such awards have generally been upheld. *Patterson*, 440 F.3d at 121.

Clearly, defendants' conduct here was egregious and reprehensible. Although such conduct would ordinarily call for a large punitive damages award, I hesitate to recommend a large award in this case because there is no evidence demonstrating the specific actions the defaulting defendants took on the night of June 26, 2006. While plaintiff has submitted evidence establishing that Cerciello and Dumphy were involved in the June, 2006 incident, he cannot identify with any particularity their degree of involvement, such as whether they physically assaulted him or were part of the crowd yelling racial slurs while others committed the assault. For these reasons, I find that a punitive damages award of $25,000 is appropriate.

## CONCLUSION

For all these reasons, I respectfully recommend that Cerciello and Dumphy be held jointly and severally liable under 42 U.S.C. § 1981 and that plaintiff be awarded $100,000 in damages against them, comprised of $75,000 in compensatory damages and $25,000 in punitive damages. I further recommend that plaintiff's claims against defendants Joseph Jirovec, Ronald Barone, and Christopher Barone be dismissed. Any objections to this Report must be filed within fourteen days of this Report and in any event no later than December 1, 2011. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

---

[7] The third factor is not relevant in this case as New York law does not provide for a civil penalty for assault and battery. The penal law provides that the crimes for which defendants were convicted are class A misdemeanors. N.Y. PENAL L. §§ 120.00, 120.14.

11

*See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989). Plaintiff is hereby directed to serve copies of this Report upon defendants Cerciello and Dumphy at their last known addresses, and to file proof of service with the Court.

                                                    /s/
                                       STEVEN M. GOLD
                                       United States Magistrate Judge

Brooklyn, New York
November 14, 2011

*U:\eoc 2011\johnson v dumphy final.docx*